UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| EVAMARIE WHITE, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 2:15-cv-00060 <br><br> Chief Judge Crenshaw <br> Magistrate Judge Newbern |

To the Honorable Waverly D. Crenshaw, Jr., Chief Judge

## REPORT AND RECOMMENDATION

Pending before the Court in this Social Security appeal is Plaintiff Evamarie White's motion for judgment on the administrative record (Doc. No. 20), to which the Acting Commissioner of Social Security has responded (Doc. No. 21). Upon consideration of these filings and the transcript of the administrative record (Doc. No. 18),[1] and for the following reasons, the undersigned RECOMMENDS that White's motion for judgment be DENIED and that the decision of the Commissioner be AFFIRMED.

**I.   INTRODUCTION**

White filed an application for disability insurance benefits under Title II of the Social Security Act on August 25, 2012, alleging disability onset as of August 16, 2012, due to uterine cancer, depression, anxiety, diabetes, and asthma. (Tr. 20, 163.) Florida Disability Determination Services (DDS) denied White's claims upon initial review and again following her request for

---

[1]   Referenced hereinafter by the abbreviation "Tr."

reconsideration. White requested *de novo* review of her case by an Administrative Law Judge (ALJ). The ALJ heard the case on March 28, 2014, in Tennessee, while White appeared with counsel and gave testimony via videoconference from Florida. (Tr. 20, 34–48.) A vocational expert (VE) also testified. After the hearing, the ALJ took the matter under advisement until May 6, 2014, when he issued a written decision finding White not disabled. (Tr. 17–28.)

On August 19, 2015, the Appeals Council denied White's request for review of the ALJ's decision, (Tr. 1–4), rendering that decision final. This civil action was timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c).

## II. BACKGROUND

White, born on August 18, 1960, was 55 years old on her application date and had worked most recently as an accounts payable clerk. (Tr. 20, 147, 219.) She has alleged a number of physical and mental impairments, but her claims of error relate only to her alleged mental health and right upper extremity impairments. (Doc. No. 20, PageID# 454–55.) The following review of the record therefore focuses on those impairments.

### A. Review of the Record

White summarized the relevant evidence of record in her briefing as follows:

> On July 10, 2012, the Plaintiff had a mammogram which showed a mass-like density in the upper outer quadrant of the right breast (Tr. 272). A repeat MRI, dated July 20, 2012 showed similar results, which the radiologist interpreted as normal summation of breast tissue (Tr. 270).
>
> On August 1, 2012, the Plaintiff had a biopsy of the uterus (Tr. 293). On August 12, 2012, the Plaintiff was diagnosed with endometrioid adenocar[c]inoma (Tr. 296). September, 2012, MRI of the uterus showed findings suggesting myometrial invasion (Tr. 295).
>
> On October 23, 2012, the Plaintiff had a total hysterectomy, bilateral removal of ovaries, and pelvic lymph node dissection (Tr. 333).

2

The Plaintiff also has been having problems with swelling of her right arm and right leg (Tr. 359). Plaintiff has been having a lump under her right breast since 2004 (Tr. 359).

On January 11, 2013, Plaintiff sought mental health treatment complaining of symptoms of depression and anxious mood (Tr. 348). Plaintiff reported symptoms of gastric distress, insomnia, loss of appetite, difficulty with concentration, increased forgetfulness, mind racing, feeling inadequate, increased anxiety when in family gatherings, loss of interest, lack of pleasure, fatigue, lack of energy/motivation, social withdrawal, painful thoughts which often reoccurred as problematic dreams, increased unprovoked crying episodes, excessive worry, unjustified fears, being oversensitive toward the reaction of others, and other problems (Tr. 348). Plaintiff subsequently underwent individual mental health therapy (Tr. 384-389).

On February 28, 2014, the Plaintiff again complained of right arm swelling from shoulder to fingertips (Tr. 390). She was unable to lift her arm and no longer could reach behind her back to wipe after bowel movements (Tr. 390). Exam revealed edema of the right arm to fingertips with decreased strength (Tr. 393). She also had difficulty following her diabetes treatment due to finances and had her blood sugar fluctuating widely from 134 to 415 (Tr. 390). Plaintiff also had an abnormal 10-gram monofilament exam of both of her feet (Tr. 393). Among other things, Dr. Gagliardi diagnosed the Plaintiff with diabetic polyneuropathy, arthritis, adjustment disorder with anxiety and depressed mood (Tr. 393).

(Doc. No. 20, PageID# 455–57 (footnotes omitted).)

### B. ALJ Decision

The ALJ's decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since August 16, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: type II diabetes mellitus; asthma; and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

    in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; and can have only occasional exposure to pulmonary irritants.

6.  The claimant is capable of performing past relevant work as an accounts payable clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from August 16, 2012, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 22, 25, 27–28.)

## III. ANALYSIS

### A. Choice of Law

As a threshold matter, White argues that the law of the Eleventh Circuit should apply because, although the ALJ conducted her disability hearing in Tennessee, White participated via video teleconference from Florida, lived and worked in Florida prior to her disability, and became disabled while living and working in Florida. (Doc. No. 20, PageID# 457–58.) It appears that White had no connection to Tennessee at the time of the hearing and that a Tennessee ALJ conducted the hearing only "to reduce the local [Florida] hearing office workload and backlog." (*Id.* at PageID# 458 n.3; Tr. 97.) White's notice of hearing states that the hearing's location is Port Charlotte, Florida, and the hearing office is Franklin, Tennessee. (Tr. 102.) It thus appears that the ALJ being located in Tennessee was nothing more than administrative happenstance and White's hearing was, for all relevant purposes, "held" in Florida. White states that she "coincidentally"

4

moved to Tennessee before filing this action. (*Id.* at PageID# 459.) Her complaint states that she is now a resident of Crossville, Tennessee, in this judicial district. (Doc. No. 1, PageID# 1.)

The Social Security Act provides that an action for judicial review "shall be brought in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). Venue is therefore appropriate in this Court, but the statute does not speak to what law the reviewing court should apply. Courts addressing this question have generally found that the law of the Circuit in which the hearing was held—generally the location where the claimant resided and experienced her disability—should apply. *See Pierce v. Colvin*, No. 7:12-CV-129-D, 2013 WL 3326716, at *3 (E.D.N.C. July 1, 2013) (district court in Fourth Circuit applied Third Circuit law where administrative hearing was held in Third Circuit); *Mannella v. Astrue*, No. CV06-469-TUC-CKJ BPV, 2008 WL 2428868, at *15 (D. Ariz. Feb. 20, 2008), *report and recommendation adopted in relevant part by Mannella v. Astrue*, No. CIV06-469-TUC-CKJ BP, 2008 WL 2428869, at *1 (D. Ariz. June 12, 2008) (district court in Ninth Circuit applied Tenth Circuit law where plaintiff's claim arose in Tenth Circuit and ALJ conducted hearing in Tenth Circuit); *Givens v. Chater*, No. 2:96-CV-11-BO1, 1997 U.S. Dist. LEXIS 3847, at *9 (E.D.N.C. Feb. 28, 1997) (district court in Fourth Circuit applied Eleventh Circuit law where plaintiff was Florida resident during employment, illness, treatment, filing of claim, and administrative hearing, although he moved to the Fourth Circuit at the end of the administrative process); *cf. Smith v. Shalala*, No. 92-6383, 1997 WL 335806, at *1 (10th Cir. Aug. 27, 1993) (finding conflict-of-law analysis inappropriate, but holding that Tenth Circuit law applied to review of ALJ decision where original hearing held in Tenth Circuit and case returned to Tenth Circuit after plaintiff's brief relocation to California); *Towenson by Mickeal v. Apfel*, 16 F. Supp. 2d 1329, 1331 (D. Kan. 1998) (district

court in Tenth Circuit bound by *Smith* and applying Tenth Circuit law where application made in Seventh Circuit, hearing held in Eighth Circuit, and judicial review sought in Tenth Circuit, but finding "better rule . . . to be to follow the law of the circuit in which the ALJ conducts the hearing").

White has not cited any Sixth Circuit authority on this question and the undersigned likewise has found none. However, the Sixth Circuit has addressed this issue in the related context of administrative proceedings under the Black Lung Benefits Act. In those cases, the Court has found jurisdiction appropriate in the Circuit where the claimant last worked in a mine and was last exposed to coal dust. *See Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1070 n.4 (6th Cir. 2013); *Walker v. Bethenergy Mines, Inc.*, 4 F. App'x 218, 220 (6th Cir. 2001). By analogy in the Social Security context, these cases would indicate that the law of the Circuit in which the claimant last worked, became disabled, and sought benefits should apply. For White, all of those events and her ALJ hearing took place in the Eleventh Circuit. This Court will therefore apply that Circuit's law in its review. However, the Court notes that White cites no relevant differences between Eleventh Circuit and Sixth Circuit authority, and the Court will also cite relevant Sixth Circuit precedent for its findings.

**B.** **Standard of Review**

Judicial review of "any final decision of the Commissioner of Social Security made after a hearing" is authorized by the Social Security Act, which empowers the district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). This Court reviews the final decision of the Commissioner to

6

determine whether substantial evidence supports the agency's findings and whether the correct legal standards were applied. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Court also reviews the decision for procedural fairness. "The Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Failure to follow agency rules and regulations, therefore, "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id.* (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see Aerial Banners, Inc. v. Fed. Aviation Admn.*, 547 F.3d 1257, 1260 (11th Cir. 2008) (noting that agency's action is unsustainable when it fails to follow its own regulations and procedures).

The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Dyer*, 395 F.3d at 1210. This Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)); *Dyer*, 395 F.3d at 1210. "However, a substantiality of evidence evaluation does not permit a selective reading of the record . . . [but] 'must take into account whatever in the record fairly detracts from its weight.'" *Brooks*

*v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

### C. The Five-Step Inquiry

The claimant bears the ultimate burden of establishing an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The agency considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit as follows:

1. A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. A claimant who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4. A claimant who can perform work that he has done in the past will not be found to be disabled.

5. If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Miller*, 811 F.3d at 835 n.6; *Phillips v. Barnhart*, 357 F.3d 1232, 1237–40 (11th Cir. 2004); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the

8

existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, the burden shifts to the Commissioner to "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011); *Phillips*, 357 F.3d at 1239–41 & n.10.

When determining a claimant's residual functional capacity (RFC) at steps four and five, the ALJ must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B), (5)(B); *Hubbard v. Comm'r of Soc. Sec.*, 618 F. App'x 643, 649 (11th Cir. 2015); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)). The agency can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, also known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Phillips*, 357 F.3d at 1242–43; *Wright v. Massanari*, 321 F.3d 611, 615–16 (6th Cir. 2003). Otherwise, the grids function only as a guide to the disability determination. *Wright*, 321 F.3d at 615–16; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the agency must rebut the claimant's prima facie case with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. *Anderson*, 406 F. App'x at 35; *Phillips*, 357 F.3d at 1242–43; *see Wright*, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

### D. White's Statement of Errors

White argues that the ALJ erred by: (1) failing to address her right upper extremity impairment and related functional limitations; (2) failing to assess limitations in her concentration, persistence, and pace, and limitations in her social functioning; and (3) improperly concluding that she could perform past relevant work as an accounts payable clerk. (Doc. No. 20, PageID# 454–55.) The undersigned addresses each of these alleged errors and finds no basis on which to reverse the decision of the ALJ.

#### 1. The ALJ's factual findings show that he implicitly considered the evidence concerning White's right upper extremity impairment.

The Sixth and Eleventh Circuits hold that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (alteration in original) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)); *Dyer*, 395 F.3d at 1211. An ALJ is also not required to engage in a function-by-function assessment of exertional capacities for which a claimant has not alleged a limitation. *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (citing *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir. 2000) (Table)); s*ee Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (finding that although ALJ did not specifically refer to ability to walk or stand, determination that Carson could engage in light work adequately accounted for such abilities "[f]ollowing th[e] rubric" of the function-by-function assessment requirement, as ALJ considered "medical evidence, Mr. Carson's testimony, and the effect each impairment has on his daily activities").

Here, White argues that the ALJ's decision erroneously did not mention her right upper extremity impairment. On January 1, 2013, White reported having had right shoulder pain for two

weeks (Tr. 303) and, ten days later, White mentioned trouble lifting her right shoulder (Tr. 341). During a January 17, 2013 appointment, she did not reference these symptoms (Tr. 302), but White reported pain in her right shoulder and an inability to lift her arm in the April 1, 2013 disability report she filed in support of her request for reconsideration. (Tr. 210). On June 3, 2013, White's primary care provider Ida Gagliardi, M.D. noted that the rotator cuff in her right shoulder had "improved." (Tr. 258). The treatment note, however, also listed "Arthralgia – Shoulder Region Right" as one of White's "active problems." (Tr. 255.) A treatment note from June 17, 2013, again listed arthralgia in White's right shoulder as an active problem while also noting generalized arthralgias and myalgias. (Tr. 250, 252.) The treatment note of a July 23, 2013 visit reported that White had complained of swelling in her right arm during a prior clinic visit and that a Doppler ultrasound performed was negative. (Tr. 359.) White's extremities were not swollen during the July 23, 2013 appointment. (*Id.*) Physical exams on November 13, 2013, and January 21, 2014, reported, respectively, no shoulder abnormalities and a normal musculoskeletal system. (Tr. 403, 398.) Finally, during a February 28, 2014 appointment with Dr. Gagliardi, White reported pain and swelling in her front upper right arm, noting that she was unable to lift the arm or to reach behind her body. (Tr. 390.) Dr. Gagliardi reported edema of the right arm to the fingertips with decreased strength and decreased range of motion. (Tr. 393.)

The ALJ began his discussion of White's RFC by noting that he has considered "the entire record" and "all" of White's symptoms. (Tr. 25.) Although the ALJ did not specifically identify all of White's non-severe impairments, there is no indication that he did not consider them. In fact, the ALJ cited treatment records indicating, respectively, that White had normal strength in her extremities and that her musculoskeletal examination was normal. (Tr. 26–27.) Moreover, White

11

has not shown that her right upper extremity impairment impacted her work-related functioning beyond the limitations included in her RFC. Although Dr. Gagliardi mentioned "decreased strength" and "decreased range of motion" in one treatment note (Tr. 393), he did not assess any functional limitations. Substantial evidence therefore supports the ALJ's decision to rely on the functional limitations DDS medical consultant Harry Beecham, M.D., identified, and shows no error in his decision not to include discussion of a right upper extremity limitation. (Tr. 27.)

### 2. Substantial evidence supports the ALJ's RFC determination.

When assessing a claimant's RFC—"the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs," 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c)—an ALJ must consider work's physical, mental, and sensory requirements. *Id.* § 404.1545(a)(4). An ALJ evaluating a claimant's mental abilities in determining her RFC must "first assess the nature and extent of [the claimant's] mental limitations and restrictions and then determine [her] residual functional capacity for work activity on a regular and continuing basis." *Id.* § 404.1545(c).

After evaluating all of the objective medical evidence of record and White's reported level of activity, the ALJ found that White retained the RFC to:

> perform less than the full range of light work as defined in 20 CFR 404.1567(b). The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; and can have only occasional exposure to pulmonary irritants.

(Tr. 25.) The ALJ made no explicit finding as to White's mental RFC; however, the ALJ made the following findings in his mental function analysis at step 2:

> The claimant's medically determinable mental impairments of adjustment disorder with mixed anxiety and depression and personality disorder, considered singly and

> in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere. For instance, medical records dated July 23, 2013, show the claimant's mood and affect were appropriate upon examination (Exhibit 13F, Page 4). Furthermore, the consultative examination report dated October 16, 2012, shows the claimant's mood was euthymic during examination; she recalled three out of three objects after five-minute delay; the claimant's intelligence was average; and she accurately performed serial sevens (Exhibit 9F, Page 4). . . . .
>
> As for activities of daily living, the Adult Function Report dated September 13, 2012, shows the claimant's activities of daily living include preparing meals, dusting, vacuuming, doing laundry, driving, going shopping, paying bills, crocheting, painting, and doing crafts and puzzles (Exhibit 4E).
>
> As for social functioning, the consultative examination report dated October 16, 2012 shows the claimant attends church regularly (Exhibit 9F, Page 3).
>
> With regard to concentration, persistence, or pace, the Adult Function Report dated September 13, 2012, shows the claimant can pay attention for two hours (Exhibit 4E, Page 6). Furthermore, the consultative examination report dated October 16, 2012, shows the claimant accurately performed serial sevens (Exhibit 9F, Page 4).
>
> As for episodes of decompensation, the record does not indicate the claimant has had any episodes of decompensation of extended duration.
> . . .
>
> Consequently, the record as a whole, including the claimant's medical records, clinical presentations and mental assessments, reasonably establishes the claimant has mild restriction in activities of daily living, mild difficulty maintaining social functioning, mild difficulty maintain concentration, persistence, or pace, and no episodes of decompensation of extended duration. . . . .

(Tr. 23–24.)

While an ALJ is required to consider the total limiting effects of all impairments in reaching his RFC determination, 20 C.F.R. § 404.1545(e), the regulations do not require an ALJ to provide a list of the minimal limitations from nonsevere impairments in that finding. *See Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853–54 (11th Cir. 2013); *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787–88 (6th Cir. 2009); 20 C.F.R. § 404.1545(a)(4). Although the ALJ did not

explicitly include mental limitations in his RFC determination, he did not dismiss White's mental impairments after finding them nonsevere, as was found to be error in the *White* decision. Rather, the entirety of the ALJ's decision and the hearing record show that the ALJ considered White's mental limitations in determining her RFC. In addition to the evidence quoted above, the ALJ considered, *inter alia*, the opinions of DDS psychological consultants David Tessler, Psy.D., and David Clay, Ph.D.; the assessment of consultative examiner Maureen O'Harra, Ph.D.; and White's Global Assessment of Functioning (GAF) scores. (Tr. 24.) In weighing these opinions and scores, the ALJ provided the following analysis:

> In a Disability Determination Explanation dated October 22, 2012, State agency psychological consultant David Tessler, Psy.D., concluded the claimant had mild restriction in activities of daily living, mild difficulty maintaining social functioning, mild difficulty maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration (Exhibit 2A, Pages 6–7).
>
> In a Disability Determination Explanation dated February 5, 2013, State agency psychological consultant David Clay, Ph.D., concluded the claimant had mild restriction in activities of daily living, mild difficulty maintaining social functioning, mild difficulty maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration (Exhibit 4A, Pages 8–9).
>
> The opinions of State agency psychological consultants Dr. Tessler and Dr. Clay are given great weight because they are consistent with the record as a whole (Exhibits 2A and 4A). For instance, Dr. Tessler and Dr. Clay opined the claimant's mental impairments were nonsevere, which is consistent with the consultative examination report dated October 16, 2012, showing the claimant's mood was euthymic during examination (Exhibit 9F, Page 4). This opinion is also consistent with the medical records dated July 23, 2013, showing the claimant's mood and affect were appropriate upon examination (Exhibit 13F, Page 4).
>
> The assessment of consultative examiner Maureen O'Harra, Ph.D., is given great weight because it is consistent with the record as a whole (Exhibit 9F). For instance, Dr. O'Harra opined the claimant was cognitively intact, which is consistent with the consultative examination report dated October 16, 2012, showing the claimant recalled three out of three objects after five-minute delay; the claimant's intelligence was average; and the claimant accurately performed serial sevens (Exhibit 9F, Page 4). Furthermore, Dr. O'Harra opined the claimant was capable

> of managing funds, which is consistent with the Adult Function Report dated September 13, 2012, showing the claimant can pay bills and use a checkbook (Exhibit 4E, Page 4).
>
> The record establishes the claimant has been assessed global assessment of functioning (GAF) scores of 50 and 60 (Exhibit 9F, Page 4 and Exhibit 11F, Page 11). *The DSM-IV-TR* (2000, p. 34) explains that GAF scores in the range of 51 to 60 indicate "moderate symptoms" from mental impairments and GAF scores in the range of 41 to 50 indicate "serious symptoms" from mental impairments. While GAF scores are useful to mental health professionals in planning treatment, the numbers assigned are rather vague and do not readily correspondent to how the Social Security Administration assesses disability in terms of severity requirements. Therefore, the undersigned assigns little weight to the claimant's GAF scores.

(*Id.*)

Finally, in his discussion of White's RFC, the ALJ referenced White's testimony that she "gets nervous and jittery around unfamiliar people" and has panic attacks, depression, anxiety, and difficulty concentrating. (Tr. 25.) In one of his hypothetical questions to the VE, the ALJ also asked whether White would be able to do her past relevant work if limited to occasional interpersonal contact. (Tr. 46.)

Although the ALJ did not explicitly list particular mental health limitations in his RFC finding itself, the ALJ's decision allows for meaningful review and demonstrates that he was aware of these limitations and considered them. *See Smith v. Comm'r of Soc. Sec.*, 422 F. App'x 855, 857–58 (11th Cir. 2011); *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (observing that an ALJ's reasons for crediting or rejecting particular sources of evidence are "absolutely essential for meaningful appellate review") (citation omitted). The findings that the ALJ discussed provide substantial evidence for his conclusions that White's alleged mental health impairments created no more than mild limitations on her ability to work. Because the ALJ considered White's mental limitations in determining her RFC and substantial evidence supports

that determination, White's claim of error does not warrant remand. *Gray*, 550 F. App'x at 854; *see Hollingsworth v. Astrue*, No. 1:09-0031, 2010 WL 2901830, at *4 (M.D. Tenn. July 15, 2010) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)) ("If it is supported by substantial evidence, we must affirm the Commissioner's decision even if we would have decided the matter differently, and even if substantial evidence supports the claimant's position.").

### 3. White can perform her past relevant work as an accounts payable clerk as generally performed in the national economy.

A claimant is not disabled at step four if she can perform her past relevant work "either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). To provide evidence of how a job is generally performed, a VE may offer testimony in response to an ALJ's hypothetical question about whether a person with the claimant's physical and mental limitations can do the claimant's previous work. *Id.* At White's hearing, the VE testified that White's previous employment as an accounts payable clerk was at the sedentary exertional level. (Tr. 38, 40.) He also testified that, if White were limited to light or sedentary work with the only non-exertional limit being occasional exposure to pulmonary irritants, she could perform this past work. (*Id.* at 45.) The ALJ relied on this testimony to conclude that White could perform her past relevant work as an accounts payable clerk, both as generally performed in the national economy and as actually performed. (*Id.* at 27.)

White argues that the record does not support a finding that she could undertake her past work as actually performed because of alleged inconsistences between her RFC, which limited her to lifting or carrying 20 pounds occasionally, and her testimony that the accounts payable clerk position required her to lift 25 pounds frequently. (Doc. No. 20, PageID# 15–16 (citing Tr. 165).) But White fails to carry her burden at step four if she can perform her past work as actually

performed *or* as generally performed in the national economy, *see* 20 C.F.R. § 404.1560(b)(2). The work of an accounts payable clerk generally in the national economy does not include lifting 25 pounds frequently, as White's prior position apparently did. Thus, the ALJ properly found White not disabled based on her ability to do her past work as generally performed.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge RECOMEENDS that White's Motion for Judgment on the Administrative Record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 26th day of February, 2018.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge